May it please the Court, I'm Brandon Mayfield. I represent the Plaintiff Appellant, Yonas Fikre, in this matter. We're here today for two claims and two issues. First, we have Plaintiff's procedural and substantive due process no-fly list challenge. And second, we have mootness and sufficiency of the pleading. And we know that claims should not be dismissed unless it can be proved beyond doubt that Plaintiff can prove no facts to support their claim. Facts are presumed to be true, but the issue is not whether Plaintiff will ultimately prevail, but whether he's entitled to an opportunity to present evidence to support his claims. Plaintiff's no-fly list claims are not moot because the government has not carried its heavy burden to show that Mr. Fikre will never again be placed on the no-fly list based on information it previously relied upon. The Supreme Court has made it clear. Do we have any information about why he was taken off the list? Well, our contention, our argument, the only reason that a reasonable inference can be drawn is because he defeated the government's motion to dismiss his procedural and substantive due-fly list claim. I'm going to be more specific because I'm not sure you're getting my question. Your time is ticking. Forgive me for interrupting, but pursuant to Latif, there's this June 2014 change in the TRIP process, right? Yes. Okay. After that, in March of 2015, he asked to be taken off the list and the government said no. That's correct. Then my timeline shows that in May of 2016, he was removed. My question is, did the government ever tell him why he was removed? No. Okay. My next question is, has the government ever said that it was incorrect, that he should not have been on the list for a certain period of time? No. Okay. Is our record that we're dealing with them when we consider voluntary cessation, is it limited to the fact that he got notice that he had been removed, full stop, that's it? I didn't understand the last part of your question. My question is, is that all he knows, just that he's been taken off the list? Yes, Your Honor. Yes. All right. So if you win on voluntary cessation and we agree that we can't tell since the government has flip-flopped once and we've got no reason to know they won't flip-flop again, forgive my informal expression of that sentiment, but that's how this record looks to me and the government's counsel can certainly respond, then I think we have to decide whether or not part of this claim is moot anyway because he's been taken off the list and after all you stipulated that he's been taken off the list. Yes. Okay. And so that certainly moots at least part of your claim, does it not? It does. Okay. And we concede that we've asked for the no-fly list claim, declaratory relief that the policy itself is unconstitutional, does not provide sufficient notice, opportunity for hearing. Declaratory relief is gone? I'm sorry? On count one, declaratory relief? I'm sorry? Is it your count? I'm trying to figure out what you concede is moot, counsel. What I'm trying to say is that issue is not moot because the policy continues. Okay. So that's a better way to do it. What's left? What's left is we still have the declaratory relief to declare that the underlying policy itself, which is still in place, which is still substantially unchanged, still gives the government an opportunity to place Mr. Fickrey and other Muslims who are overseas on the no-fly list. We're also asking that the government not use the no-fly list as leverage to ask somebody to become an informant, particularly Muslims, as in the case of Mr. Fickrey, on the no-fly list again, to give injunctive relief to explain why he was placed on the no-fly list. As you just had questioned, does he know? No, he doesn't. We're asking for why he was placed on the no-fly list and if he's placed on the no-fly list again in the future to notify him and others that they are placed on the no-fly list instead of waiting for them to be overseas, try to go to an airline and realize somehow mysteriously they're not allowed to fly. Okay. If those are the four claims, those are the four that you listed in your brief? Yes. Okay. My question on the second one is this. The second one is that the government not use placement on the list as leverage to coerce someone to cooperate as an informant, basically. Yes. And I'm trying to figure out whether your claim is that the relief you're asking for is that the government be ordered not to, I'll say wrongfully, put someone on the list who otherwise wouldn't be on the list for the purpose of facilitating arm twisting versus whether you're asking for an order that if someone is on the list, the government ought not be allowed to make that offer, that you'd come off the list if you agreed to cooperate. What's your claim for relief? Not condition the removal upon agreeing to become an informant. But is that an issue that is right for us to rule upon at this point? There's no concrete controversy on that point right now, because he's been removed. His name has been removed. So we would just be given an advisory opinion at that point. I would beg to disagree, because we're claiming that it's a custom and policy for the government to place individuals on the no-fly list and then use that placement on the no-fly list as leverage not to place them, I mean, for them to become informants. But does the complaint have specific allegations to that effect? For it to show a custom and policy, there has to be specific elucidation of incidents where that has occurred on several occasions. And I don't think your complaint goes into that specificity. Well, we have cited that in terms of in the pleadings that this has happened in other cases, for example. But that's not specific enough, though, under Rule 11. I mean, under Rule 8 and under the cases that have interpreted that. Iqbal and Twombly, namely. Iqbal and Twombly just require us to show that we can make the reasonable inference that the behavior complained of is plausible. Right, you have to show a plausible basis for relief. And for a custom and practice, that means you have to articulate with some specificity individuals, dates, and occurrences that fit within your theory. Well, we have alleged that it is a custom and policy for government officials to use the no-fly list as leverage. That's all I can say to answer that question. Yeah, custom and policy is pretty conclusory, without any specifics. But I think Judge Rollison is backed up by the fact that they did, he's alleged facts that that is precisely what happened here. In other words... One incident, though. That's one incident. And if you're trying to allege a custom and practice, I think the case law requires some continuity of action, not just against one person, but a routine of doing that. Was Judge Brown asked to take judicial notice of the other cases, several of which are pending in front of Judge Brown, where similar allegations are made? But I don't see in the record where she was asked to look at them holistically. You're right. We didn't ask her to take judicial notice of those other cases, although we've cited it repeatedly in the pleadings and now, of course, in our opening brief and reply. And that is Mukdad, Tanvir. There's... Well, she addresses them in her order. Yes. All right. I'd like to take this opportunity to at least address in some more detail Plaintiff's Fourth Amendment claim. And that is the Fourth Amendment claim is adequately pled. And as you said, Judge Rawlinson, the Iqbal analysis for pleadings is whether the factual allegations allow the court to draw a reasonable inference that defendant is liable for the conduct complained of. And here the complaint meets that standard for a Fourth Amendment claim. And that is, first, Plaintiff alleges that his communications were intercepted, that his telephone, e-mails, tech messages were intercepted, retained and disseminated to various government agencies. And we also have a notice filed in the Southern District of California that the government intended to use these communications for a criminal indictment that has since been dismissed. Also, independently... But what's wrong with that? I'm sorry? What's wrong with that? Is it your contention that the... The trial court found it was pretty clear that there was a FISA authorization. Isn't that fair? And if so, I'm just trying to get at is that your... Are you really taking on FISA and saying anything that wasn't properly authorized? Or what is your argument here on the Fourth Amendment? Both. We've alleged in Claim 12, Claim 12 is a strictly, Claim 12 of the Fifth Amendment, Fifth Amendment complaint is strictly a Fourth Amendment violation claim. We have in Claim 13 taken on FISA directly and then the subsequent claims, the Stored Communications Act, Wiretap Act. However, they're all interlocking and actually... So the communications that you're complaining about was collected pursuant to FISA? We don't know, but that was the government's... The government provided notice that they had collected these communications pursuant to FISA authority. It doesn't say they had an order. It doesn't say what section they used. Just that they collected these communications, including text, e-mail, phone conversations. Right. And that's in the record and that's... Okay. If that's what we're talking about, we've certainly read that. So my question is... It sounds like you are taking that on. The trial court in this case, this order appealed from something to the effect that it's broadly recognized that that's proper authority. Is there authority directly on that point? That authority is... You'd have to look at all of the circuit court cases throughout the U.S. and some say, yes, it's constitutional and some say it's not. When I say yes, I'm talking specifically about Section 50 U.S.C. 1804, which changes the purpose of the FISA intelligence to a significant purpose. What is your strongest authority? I'm sorry? Of the authority that you're referring to, the various circuit authority, what's the strongest authority for yours? The strongest authority I have at all is U.S. v. Keith. Even though this is a pre-Patriot Act case, that's our strongest authority, as is U.S. v. Kavanaugh, which is this Court's Ninth Circuit opinion. And in that case, well, first of all, in Keith, Keith said that it held there should be no exception to advanced judicial authorization for internal domestic investigations. And in this Court's Kavanaugh case, they said primary purpose for any surveillance application under FISA must be to gather foreign intelligence and must include minimization procedures. That's our authority. And this case on point has not been decided by the Ninth Circuit, and it hasn't even been decided by the Supreme Court again since Keith. So in addition to pleading that his communications were intercepted, he also has pled that they were unconstitutional. That is, that he and his brothers were U.S. citizens, that they were not, that all the communications took place when they were in the U.S., and that it was without a warrant, without probable cause, and unreasonable. Therefore, it clearly meets the Iqbal pleading standards and the 12B6 pleading standards. The, coincidentally, the, when there's not a warrant, it's the government's burden to show that the surveillance of the search was not reasonable. Also, any hypothetical use of FISA, that is also, that's a defense for the government to plead and prove, which it has not yet. I'd like to, unless you have any further questions, I'd like to reserve my time for a rebuttal. Certainly. Good morning, Your Honors. My name is Joshua Waldman. I'm here from the United States Department of Justice representing the U.S. Department of Justice, and I'm here to ask a question. Why does it make it moot when the government formally, publicly, and unequivocally informed him that he was removed from the no-fly list? But they only informed him that he was removed. Why does that make it moot if we're under the voluntary cessation doctrine, would you agree? Yes. And our case authority seems to require that there be some formalized indication that there would not be a recurrence of the eventuality that caused the lawsuits. Where do we have that in this case? Well, I would say this, Your Honor. Number one, after he was removed and got formal notice that he was removed, he did, in fact, fly, and that's uncontested in the record. And it's been two years to the day since he was informed that he's on the no-fly list, and there's no indication in the record that he's back on the no-fly list at this point. So we have a formal, public, and unequivocal statement. No, no, no, no, no. You're starting at the wrong place. Yes, Your Honor. To answer Judge Rollington's question, don't we have to start with there was a change to the TRIP procedure, and that was court-ordered, so it's not voluntary. The court ordered, right? So I think you get that. That's a point for your team. But after that, here's what we're struggling with. After that, he asked to be taken off the list, and the government said no. That's right, but then he — he was removed. And as you all know, I think, the government continues to receive additional intelligence, analyze that intelligence, and periodically audit the people that are on the no-fly list and take them off if that's appropriate. But what's to keep the government from again placing him on the no-fly list? Well, I think what you can do is, number one, I think you ought to engage in just a common-sense exercise, which is if the government truly thought, based on the information that he had, that he was, in fact, a threat to civil aviation and belonged on the no-fly list, it's far-fetched, as Judge Brown said, to think that they take him off the no-fly list, allow him to fly, even thinking that he's a threat to civil aviation, simply to moot this claim. But we have to be very concerned about our precedent. This is a really important doctrine, and given these facts, it just strikes me as we'd be creating havoc in our precedent. Judge Brown did a lot of hard work on these cases, no question, and she recognized in her order this doctrine is an uncomfortable fit. What's your best response? I mean, you know what the factors are, and how do they fit these cases, where we've got no explanation at all. Well, I think that's true normally when people are taken off the no-fly list. Well, there are other things the government could have done. The government could have said, we won't put you back on for the same reasons we had you on before, even though we're not going to tell you what those reasons are, and I'm not suggesting that you ought to. Or the government could issue something that he could show people, because he's making a claim about his loss of his business reputation, that acknowledges he shouldn't have been there. I would say this, Your Honor. The reason why we filed the declaration, for example, in Tarhouni is because Judge Brown asked us to do so, and because it was one of the first times that she had encountered this type of situation. Sure, but counsel, that, and forgive me for interrupting, but that's exactly the problem you've got, because doesn't it demonstrate that there is additional relief that could be granted here? That's the definition of not moot. Well, let me say this. If you think the difference between mootness and not mootness is the absence of a declaration, and if there were a declaration, that it would clearly be moot, I stand here today to represent on behalf of my client that he will not be placed back on the no-fly list based on the currently available information. And if Your Honor thinks that's important, just issue an order giving us leave and directing us to file that declaration, and we will do that. Why does that take a court order? Why hasn't the government offered that? The requirements for voluntary cessation aren't secret. And they're very well established and really consistent. It's a very consistent area. We didn't, we didn't offer. What happened in prior cases is, let me just march through the history, because this has happened four times. Okay. First time it happened was in a case called Lateef, where there were 15 plaintiffs and some number of them, I can't remember the exact number, were told under the new procedures they're not on the no-fly list, and the court simply removed them from the case as dismissed, without any declaration. But the case continued with the other plaintiffs. Then Tarhouni came, and Tarhouni was removed, told that he was removed under the new procedures. And Judge Brown saying, well, this is the first time it's going to moot a whole case. Could I have some sort of assurance, a declaration? And we said, sure, and we filed one. Then Mockdad came along. Mockdad was over in the Sixth Circuit. And there the district court judge said, well, why don't you just file the same, you know, ordered us to file the same declaration that was filed in Tarhouni. So we did, and the Sixth Circuit held that that mooted the case. And so now we have this case, and Judge ---- Kagan. Could you just forgive me for interrupting on that one? But you are marching through, and it's very helpful. Sure. Didn't the Sixth Circuit ---- aren't there two things in that declaration? One is you're off the list. The other is we won't put you back on for the same reasons. Yes. That's the declaration that we filed in Tarhouni, and the same in Mockdad, just different plaintiffs. The one you just offered a second ago here? Yes. Okay. And then by the time Judge Brown got this case, I think she said to herself, there's no indication anymore to me that the government is doing anything other than operating in good faith when it takes this person off the no-fly list. Tarhouni came back to her on remand. There's no allegation that he was back on the no-fly list. In this case, the plaintiff actually flew, and it was undisputed in the record. So I don't think she needed a declaration, but I'm saying to you, if you think that that's the difference between mootness and not mootness, we're happy to offer the declaration. The problem to me with your position is that you put the onus on the court to fulfill a burden which under our precedent is on you to convince us that the voluntary cessation has some sense of permanence. And I don't understand why an order is required if the government has determined that there is a sense of permanence to this decision, why an order is required for the government to articulate that. Well, the only reason why we did that in the first place is because we were ordered to do so by the district court. And in this case, that was back in Tarhouni. And in this case, we were fully prepared to do it. But you have to be ordered by any court. That's what Judge Rawlinson is asking. Because I don't think that you do. Because our view is at this point you see a pattern where when people are removed from the no-fly list, it's real. What I see is litigants complaining after many years of trying to get off the list and having their lives disrupted and having their spouses leave them and marriages destroyed and businesses interfered with, at least that's the allegation, and of course that's what we have to take at this point. But there is a possibility for additional relief to be granted. And since it is your burden and a heavy one to prove mootness, it just strikes me that isn't that the obvious response for the government? And now you're telling me you don't think it's necessary? Really? I don't know. I don't understand what relief you would order, Your Honor, because he's not on the no-fly list. Relief that you just offered that you now seem to be taking back off the table. I'm not taking it off the table, Your Honor. I'm perfect. I don't think that it's required to show that we satisfy voluntary cessation. But if you disagree, we're happy to offer it. So it's on the table. The cases we have look at what the agency has done to commemorate the voluntary cessation. We don't, generally in our cases, we don't just take the word of the agency. I dissented in the Rosebrock case because there was an e-mail that memorialized the cessation. I didn't think that was enough. My colleagues disagree with me. But in our precedent, there has to be some concrete memorialization of the voluntary cessation, in my view, in order for the voluntary cessation to be cognizable or to be recognized by our court. And in Rosebrock, there wasn't a change in policy. That's what the majority relied on. They said that e-mail is okay, but only because it doesn't represent a change in policy. What we've got here, and this is really important if you can, you know, for me anyway, the problem we've got is there's a court-ordered change in policy that the government complied with, and then after the fact, the government said he may not come off the list, and then after the fact, there's really no explanation there in that interval that he's off the list. That's the problem. Okay. You know, I think there's no more concrete way of showing that the government is serious about it than that he flew after he was taken off the no-file list. But I can't help him in his request where he says I've got — this has created chaos in my life and in my business reputation and relationships. The fact that he got to — was he going to — he needs something. Why isn't he entitled to declaratory relief? Because, Your Honor, I mean, I don't — before you award declaratory relief, let us just file the declaration that says he's not on the no-fly list and he won't be put back on. But even if he got that declaratory relief, the thing you're talking about, Your Honor, which is everyone agrees that even if he had our declaration or your declaratory judgment, he could be put back on the no-fly list in the future. Absolutely. Going forward, absolutely. So he has no assurances. Different question. Different question. Going forward, he has no assurances. Right. So if he wants an assurance today — But he's looking for assurance. He's looking for declaratory relief that says that he can show business associates, that he can show the person who's now his former wife, that he can show — to try to clean up the chaos that's been created in his life, according to him, and I only have his side of the story for that. Okay. But nevertheless, that's his allegation. And so to show that he's not entitled to — or that relief may not be granted, to me this seems like the obvious first question, is he could have — the government could give him a declaration that it made a mistake. Well, first of all, you'd have to adjudicate that the government made a mistake, which is not sort of the question on appeal right now. No, no, no. We're trying to adjudicate whether or not this fits the voluntary cessation doctrine, and we are pointing to a reason it does not. I know, but — And then the next question is whether it's otherwise moot, and if it's — and it would be if the government couldn't give him relief, if no relief were available. Right. But you've got two layers of problems here. Well, you know, if you think that what he needs is some sort of assurance that he won't be put back on based on the currently available information — That's his argument. — then we are prepared to file that declaration with this Court. Okay. So that's the second layer. Okay. And what was the first layer? The first layer is your problem with the voluntary cessation doctrine. Okay. I thought the voluntary cessation doctrine, the answer that Judge Rawlenton was giving, is you need some sort of concrete assurance from the government, and that's what the declaration would be. And that declaration would say — It's just going to be retrospective, right? I'll give you that. It's just retrospective. Yes. There's no guarantees going forward, of course. And so would declaratory judgment. So it would be no different. And so all we're just saying is just give us an opportunity to file it. We were prepared to do it. We were actually expecting Judge Brown to ask for it, and she didn't because I think she was comfortable that the government was operating in good faith. And this Court's precedents say that in this area there was greater solicitude given to the government under the voluntary cessation doctrine. Wouldn't it be disturbing to us that you tell us you were prepared to do it and you haven't done it? Because she didn't — we thought that she would ask for it, like she did before, and then she didn't. Okay. That's the difficulty I have with your position, is that your perspective is that you have no obligation to memorialize the voluntary cessation unless you're asked or ordered to do so by a court. That is not what our precedent says. We look at what has been done to memorialize the voluntary cessation at the outset. So those cases do not involve instances where there has been an order from the government that has already been done by the party to memorialize it. So I have some difficulty with your position on this because I think that your perception is that unless asked or ordered, you have no obligation to memorialize your voluntary cessation. I have a problem with that. Well, you know, no court has ever said that before. If that's your view — The cases say that to me. The cases tell you that. Your Honor, I don't know — I'm not trying to resist you. If you think that that's necessary, we will provide it. Just after this case, issue an order saying government has — Not issuing an order. I'm following the law. The law already tells you that's what you have to do. I wouldn't — I don't know about my co-panelists, but I do not think our cases put the onus on us to tell you what you have to do to meet the voluntary cessation doctrine. Okay. Let's shift gears and ask you another question. Sure. Because your time is ticking away and you look like a guy who wouldn't mind having the subject changed. I would actually — I would actually like to add one more final point, if you don't mind, which is two months ago, I was in this Court. Judge Christin, you were on the panel, the en banc panel in Ibrahim. We're in San Francisco, actually. Yes. I've been thinking you're getting a lot of frequent flyer mail. I'm seeing you here a lot. Yes, from Ibrahim. Yes, we were there. You recall many of the judges — I realize it's a different panel — many of the judges said, why don't you just tell people that they're not on the no-flyers  That's what they kept saying to me. Okay. So that's what we've done. Now you're going to use up your time. That's a really different case. And we were there only on fees. And we're looking retrospectively about, why did we have to have all this litigation? Why didn't you just tell him? That's a really different question. But I don't think we need to go there and I don't think that case is going to help you today. But I do have a different question, counsel, if you wouldn't mind. And that is this. One of the items that he's ticked off of the four places where he thinks he's still entitled to relief is that the government be ordered — this is prospective. The government be ordered not to use placement on the no-fly list as leverage, basically, to convince people or, he thinks, to coerce people to serve as informants. Is that relief that is not available, cannot be granted? I just think that's entirely speculative, that that kind of thing is going to happen again. He alleges that it did. I mean, very generously construed, his allegation is, I shouldn't have been on the list. They put me on the list while I was out of the country, after I had just taken an international flight, so that they could twist my arm. And I'm wondering if you think that that is relief that cannot be granted. It sounds like it is. You think that is too speculative and that's why it ought not be here? I do. It was not ripe. Yes, Your Honor. I mean, the no-fly list was ripe because he was on the no-fly list. But all of that question was entirely speculative. If he was on the no-fly list, he had been on the no-fly list for a matter of hours, right? Because he had just arrived overseas when he had the visit in the embassy. No. I think this is in the complaint. He was on what's called a one-time waiver to get a citizen back to the country. Because if you recall, he came back to the country. Then he went through the DHS trip process. He went through again under the revised process. Then he was told he was still on the no-fly list. And then he was removed. Wait. Can you do that again? So he'd flown overseas? That's right. I can't tell you exactly the year that that happened. That's okay. If you could just do the sequence, because I think I'm missing a step and I want to be corrected. Okay. So he was overseas on the no-fly list, and that's why he says he couldn't come back. In those situations — So did he know he was on the no-fly list when he left? Was there an exemption? Is that what you're saying? No. I think what happened, if I take his facts as accurate, my guess would be that he was put on the no-fly list sometime between when he left and when he sought to return, because he was overseas for some number of years. That's my point. Yes. That's my point. That is my understanding of the sequence. He got out of the country just fine. Then when he was out of the country, he couldn't get back. That's right. And I think his allegation — this is my question. If his allegation is that he was put on the list for the purposes of facilitating this ask, that he cooperate, he is, I think — one of the allegations, he's seeking — one of the claims, rather, is he's seeking an order preventing the government from putting somebody on the list for that purpose. And your response is that that's not relief that's available because it's too speculative? I think it's speculative. He would first have to be put back on the list, which, for the same reasons that we think, you know, the voluntary — we went under voluntary cessation, we think that that's not going to happen either. One of the reasons he wants something from the government promising they won't put him back on for the same reasons, right? Right. But if he had that relief, either through our declaration, if you allowed us to file it, or through a declaratory judgment, that would then prevent that other thing from happening. You wouldn't need additional relief for that. I think I understand your response, and I appreciate your clarifying the sequence for me. Okay. Thank you, counsel. Rebuttal. Counsel, before your time begins, would it satisfy you if the government were to file a declaration of the nature we discussed with opposing counsel? With respect to? The past placement on the no-fly list, and that he will not be placed on the no-fly list for those reasons. We would like that assurance, of course, but we're not just — first of all, we have to make a distinction. We're not just challenging individual actions against Mr. Fickrey. We're challenging the no-fly list as being unconstitutional. It's a — it has a very low standard. I don't know the exact standard, but it's something to the effect of reasonable suspicion of being involved in a reasonable, suspicious terrorist activities. I mean, there's no — we don't know why somebody's placed on the no-fly list or how they get off. We're challenging not just the fact that he was put on or taken off the list, but the policy itself, which does not provide an adequate notice or opportunity for review. But wouldn't that be moot if the declaration — you want to challenge it prospectively. Is that what you're saying? Prospective application of it? We want to challenge, yeah, both prospectively and in the future. We feel like it's not — the government — by the way, just to clarify, the government and voluntary cessation, the government has the heavy burden to prove that the — it's absolutely clear that the wrongful behavior complained of in this case being placed on the no-fly list could not be reasonably expected to occur. That's the government's burden under voluntary cessation that you've so articulately been talking about. And we are arguing they have not met that burden. They have not. I agree. They have not met that burden at this point. But I was asking you if the declaration is fouled, in your view, would that meet the burden? That would not meet the burden. Because? Because we've argued that he can be placed arbitrarily on that. You can't — you cannot deprive somebody of a fundamental right without due process of law. And even if it's not a fundamental right, even if you didn't agree that this was a fundamental right, right to movement, which Justice Stewart in 1968 had said, yes, it is, even if you didn't, you still can't deny a right without due process if it's arbitrary. And we — We would be able to bring a lawsuit. If it happened in the future, if the declaration resolved all of the past issues about the no-fly list, and then in the future for different reasons he was placed on the no-fly list, you could file an action at that point, couldn't you, to challenge the placement? We could, but that's precisely the reason why we have this voluntary cessation doctrine, so that we don't have this. This is precisely the kind of litigation maneuvering that the Supreme Court had condemned already versus Nike in 2013. This is precisely that kind of a case. He was on the list for almost six years. Even after he was reaffirmed in May 2016, he remained on the list under the so-called new policies, which were virtually the same as the old policies. The only thing that changed is now they had to confirm that, yes, you're on the policy. That is not a substantial change in the underlying policy which we are challenging, which we argue is arbitrary and capricious, where you can't strand a Muslim individual, U.S. citizen, when he's overseas, to try to gather information for criminal investigations that are occurring here in the U.S., either in Southern District of California or here in Portland. And so we're challenging the policy itself. We say it doesn't afford the constitutional requirements of due process, and we're asking for prospective relief. Why was his name added to the no-fly list in the first place? This destroyed his marriage. It destroyed his business. He's not here today because he's currently a long-haul truck driver who couldn't be here because he's trying to make ends meet. It caused him ruination of his business, his family relationships. There's a stigma that somehow you are a terrorist, and therefore the relief he's asking is if he's placed on the no-fly list again, he's notified of this and the reason why, both in the past, prospectively, and in the future. All right. Thank you, counsel. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Rawlinson, Christen, Garbis